UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No.: 18-878 (DSD/BRT)


Fred Mitschele; Jason Mitschele; and
Michael Minor,

                Plaintiffs,

     v.                                                    **ORDER**

Municipal Parking Services; Travis Carter;
Joseph Caldwell; Mark Evenstad;
Richard C. Gage; Thomas G. Hudson;
Tony Jacobson; Kurt Lange; Thomas Lowe;
Robert G. Parish; and Robert Samson,

                Defendants.


     This matter is before the court upon defendant Municipal Parking Systems' (MPS) motion to compel arbitration. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.


                              **BACKGROUND**

     This contract dispute arises out of MPS' alleged failure to abide by the terms of the parties' agreements regarding the use of plaintiffs' patented parking meter technology and related shareholder rights.

**I.   Parties**

     MPS is a Minnesota Corporation that sells parking meters and other parking enforcement technologies to businesses and

municipalities.[1]  Compl. ¶¶ 9, 22.  Plaintiffs Fred Mitschele, Jason Mitschele, and Michael Minor are Canadian citizens.  Id. ¶ 4.  Plaintiffs collectively own patented solar-powered parking meter technology invented by Fred Mitschele.  Id. ¶ 1.  Plaintiffs' parking meter technology incorporates digital cameras, internet connectivity, touchscreen user interface, and other digital and wireless features to facilitate parking payment options and enforcement.  Id. ¶ 21.

**II. The Original Agreements**

On April 1, 2010, plaintiffs agreed to sell forty-nine percent of their interest in the parking meter technology to MPS (the Original Agreement).  Id.  MPS, in exchange, agreed to make monthly royalty payments and to pay $300 for each new parking meter it installed using plaintiffs' technology.  Id.  MPS also agreed to share a percentage of its monthly net operating income or five percent of any third-party investment with plaintiffs, provided it achieved certain sales figures.  Id.  MPS further agreed to give plaintiffs a percentage of common stock and an option to purchase a percentage of its private placements on a pro-rata basis.  Id. In addition, MPS agreed to bind any future third-party investors to certain terms and to copy plaintiffs on all correspondence relating

---

[1] The other defendants, Travis Carter, Thomas G. Hudson, Joseph Caldwell, Mark Evenstad, Richard C. Gage, Robert G. Parish, Kurt Lange, Robert Samson, Thomas Lowe, and Tony Jacobson, serve on MPS' Board of Directors.  Id. ¶ 23.

to plaintiffs' parking meter technology.  Id. ¶¶ 26, 35, 52, 65.

The Original Agreement provided that "[a]ny dispute arising under this [a]greement shall be determined by arbitration [sic] shall be determined by a single arbitrator."  Cassady Decl. Ex. 1 ¶ 4.  The Original Agreement further provided that the "arbitration shall be initiated and conducted in accordance with the provisions of the Commercial Arbitration Act of British Columbia" and that it "shall be construed under the laws of British Columbia, Canada and ... that any dispute shall be resolved [sic] arbitration as set forth herein."  Id. ¶¶ 4,9 (emphasis removed).

The parties amended the Original Agreement twice thereafter. Id. Ex. 2; Ex. 4.  Neither amendment altered the Original Agreement's arbitration provision.  See id. Ex. 2 ¶ 13; Ex. 4 ¶ 8.

On March 12, 2012, plaintiffs agreed to license their remaining fifty-one percent interest in the parking meter technology to MPS, in exchange for, among other things, a $2,000,000 CDN payment and the right to periodically conduct third-party audits of MPS' revenues (the Patent License).  Id. Ex. 3 ¶ 12; Compl. ¶ 46.  Under the Patent License, MPS further agreed to maintain plaintiffs' patent portfolio in good standing, market the patents, and place a patent identifier on each parking meter that it sold.  Compl. ¶¶ 58-64.  The Patent License provided that "[a]ny breach of this Agreement shall be subject to the notice and

3

cure provisions set forth in the [Original Agreement] including the arbitration provision ...." Cassady Decl. Ex. 3 ¶ 30.

On October 12, 2012, the parties consolidated the Original Agreement and its amendments and the Patent License into a Binding Letter Agreement. Id. Ex. 5. The Binding Letter Agreement is "governed by the laws of the Province of British Columbia" and expressly states that "the dispute resolution procedures set out in the [Original Agreement] shall apply ...." Id. ¶ 30. The Binding Letter Agreement further provides that in the event of any conflict between it and the previous agreements "the terms of the Binding Letter Agreement shall govern." Id. ¶ 29.

**III. The Shareholder and Stock Redemption Agreements**

On October 16, 2012, Fred Mitschele and Jason Mitschele entered into an agreement with MPS regarding, among other things, their stock voting rights and obligations and the sale and purchase of MPS transfer stock (the Shareholder Agreement). Id. Ex. 6. The Shareholder Agreement also allowed Fred Mitschele and Jason Mitschele, as MPS shareholders, to select a member of MPS' board of directors until MPS purchased the remaining fifty-one percent interest in plaintiffs' parking meter technology. Id. ¶ 6.1. The Shareholder Agreement provides that the parties must "submit to the jurisdiction of the federal and state courts located within the geographic boundaries of [sic] the Hennepin County, Minnesota for the purpose of any suit, action or other proceeding arising out of

4

or based upon this Agreement ...." Id. ¶ 7.4. The parties also agreed "not to commence any suit, action or other proceeding arising out of ... this Agreement except in the federal and state courts located within the geographic boundaries of Hennepin County, Minnesota, and ... waive any claim that it is not subject personally to the jurisdiction of the above-named courts." Id. The Shareholder Agreement states that it is "governed by, and construed in accordance with, the laws of the State of Minnesota." Id. The Shareholder Agreement does not reference the arbitration provision in the previous agreements.

On December 19, 2012, MPS told plaintiffs that it was completing its initial capital formation and offered to purchase their shares of MPS stock before the year's end. Compl. ¶¶ 71, 74. Plaintiffs accepted MPS' offer and sold their stock back to MPS for ¢10, ¢23, and ¢29 per share respectively. Id. ¶ 76; see also Cassady Decl. Ex. 6. Shortly after the buy-back, MPS sold the stock for $2.00 per share. Compl. ¶ 76. The terms of the buy-back of Jason Mitschele's MPS stock were recorded in a Stock Redemption Agreement. Cassady Decl. Ex. 6. The Stock Redemption Agreement is "governed under the laws of the State of Minnesota" and provides that all claims arising under it must be decided in Minnesota state or federal court. Id. ¶ 4.3. The Stock Redemption Agreement does not reference the Original Agreement's arbitration provision. Id.

**IV. Arbitration**

On July 25, 2016, plaintiffs sent MPS a default notice alleging that MPS had breached the Original Agreement and its amendments, the Patent License, and the Binding Letter Agreement by, among other things, not making timely royalty payments, not paying the $300 parking meter fees, and not permitting third-party audits. Compl. ¶ 67; Cassady Decl. Ex. 6.

In mid-2016, MPS filed an arbitration action in British Colombia, Canada, against plaintiffs. Cassady Decl. Ex. 6 at 1. In the arbitration, MPS seeks a declaratory judgment that it has not breached the parties' agreements and raises an unjust enrichment claim. Id.

On October 6, 2016, plaintiffs filed a statement of defense in the arbitration, and requested a declaratory judgment that MPS had breached the parties' agreements. Id. at 8-12. Plaintiffs also asserted breach of contract counter-claims, alleging that MPS failed to: make timely royalty payments; provide auditor reports; pay the $300 parking meter fees; properly manage and market the patent portfolio; fulfill its obligations regarding private placements and new equity investments; share five percent of third-party investments; copy plaintiffs on communications; install a patent identifier on each new parking meter; bind third-party investors to the parties' agreements; and adhere to the agreed upon process for nominating and appointing its board members. Id. at

6

8-12.

On February 21, 2018, the parties entered into an agreement within the arbitration proceeding specifically agreeing to the composition of the arbitration panel and the scope of the arbitration proceedings (the Arbitration Agreement).[2] Cassady Decl. Ex. 7. Relevant to this motion, the parties agreed that the "jurisdiction, role, and function of the arbitrators shall be to hear and determine the matters in issue in this arbitration and all matters of law, fact, and procedure incidental to the issues" pending in the arbitration, i.e., incidental to MPS' claims and plaintiffs' counter-claims. Id. The arbitration is still pending.

## V. This Suit and Motion

Plaintiffs commenced this suit on March 23, 2018, raising breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty claims. Compl. ¶¶ 79-89. Plaintiffs also bring shareholder claims under Minn. Stat. § 302A.471(4) and Minn. Stat. § 302A.751. Specifically, with respect to the shareholder claims, plaintiffs allege that they were unaware that MPS planned to publically sell their stock shares after the buy-back and that MPS misrepresented its intentions when offering the buy-back. Compl. ¶ 75. MPS now moves to compel arbitration.

---

[2] The Arbitration Agreement states that the arbitration commenced pursuant to the Original Agreement and its amendments and the Binding Letter Agreement. Id.

7

**DISCUSSION**

**I.   Standard of Review**

Under the Federal Arbitration Act, a court must grant a motion to compel arbitration if the parties agreed to a valid arbitration provision.[3]  See 9 U.S.C. § 4.  In a motion to compel arbitration, the court must determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement.  Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004).

In determining whether a particular dispute is within the scope of the arbitration agreement, the court does not examine merits of the underlying claims.  Medcam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005).  "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration."  Id.  An order to compel arbitration should be granted "'unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'"  Id. (quoting Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001)).  In

---

    [3] The Arbitration Agreement does not include a choice-of-law provision or a clear expression by the parties that they do not want the Arbitration Agreement construed by the court under the Federal Arbitration Act in deciding this motion.  See Cassady Decl. Ex. 7.  Accordingly, the court will apply the Federal Arbitration Act and federal law.  See UHS Mgmt. Co., Inc. v. Comput. Sci. Corp., 148 F.3d 992, 997 (8th Cir. 1998).

determining whether a dispute is subject to arbitration, the court must examine each claim separately. See KPMG LLP v. Cocchi, 565 U.S. 18, 22 (2011).

If there is a valid arbitration clause, the court must first determine whether the clause is broad or narrow. Unison Co. v. Juhl Energy Dev., Inc., 789 F.3d 816, 818 (8th Cir. 2015). If the clause is broad, the presumption in favor of arbitration applies, and the court is required to send the claim to arbitration "as long as the underlying factual allegations simply touch matters covered by the arbitration provision." Id. (internal quotation marks and citation omitted). If the clause is narrow, "the presumption of arbitrability is lessened." Twin City Monorail, Inc. v. Robbins & Myers, Inc., 728 F.2d 1069, 1073 (8th Cir. 1984).

**II. Scope of the Arbitration Clause**

As discussed, from 2010 through 2013, the parties entered into numerous agreements. The Binding Letter Agreement consolidated the Original Agreement and its amendments with the Patent License and expressly incorporated the Original Agreement's arbitration provision. The Shareholder and Stock Redemption Agreements on the other hand did not incorporate the Original Agreement's arbitration provision nor do they contain their own arbitration provision.

Plaintiffs argue that their shareholder disputes raised here are not subject to arbitration because the agreements that govern those disputes require resolution in a Minnesota court proceeding.

9

In making their argument, plaintiffs ignore the Arbitration Agreement in which they expressly agreed to arbitrate all pending and incidental disputes between the parties notwithstanding the previously conflicting forum provisions. The court finds that the Arbitration Agreement supercedes the prior agreements with respect to the subject of arbitrability and that its "all matters of law, fact, and procedure incidental to" language broadly applies to plaintiffs' claims raised here. Cassady Decl. Ex. 7. Indeed, the Eighth Circuit Court of Appeals has long held that the use of comparable phrases such as "arising out" of or "relating to" renders an arbitration clause broad, favoring arbitration. Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997).

In fact, plaintiffs' breach of contract claim raised here is nearly identical to the breach of contract counter-claims raised in the arbitration. Both allege, among other things, the same failure to make royalty payments and to pay the $300 parking meter fees. Similarly, plaintiffs' breach of implied good faith and fair dealing claim raised here is similar to their arbitration counter-claim regarding MPS' alleged failure to provide plaintiffs the benefits they are entitled to under the agreements, including maintaining their patents in good standing.

In addition, plaintiffs claims here under § 302A.471(4) are sufficiently similar to the shareholder claim raised in the

arbitration that MPS suppressed their shareholder voting rights by manipulating the board of director nomination and appointment process in its favor. Moreover, the claims brought here under § 302A.751 rest on a theory that MPS acted fraudulently, illegally, and prejudicially when buying-back their shares of MPS stock. Plaintiffs' claims raised in the arbitration similarly allege that MPS failed to fulfill its contractual obligations regarding acceptance of private placements and equity investments, share five percent of investor funds, and bind third-party investors to agreed upon conditions, and that they consequently suffered economic loss as a result. In effect, the shareholder claims raised in the arbitration and here center on MPS' alleged practice of misrepresenting its intentions to its shareholders and misconduct regarding the issuance and redemption of it stock shares. Although not identical, given the broad language of the Arbitration Agreement, the underlying factual allegations raised here sufficiently touch on the shareholder matters addressed in the arbitration and are now governed under the Arbitration Agreement.

Further, plaintiffs' delay in challenging the scope of the arbitration undermines their position. Plaintiffs certainly could have resisted the arbitration at the outset, attempted to limit its scope, or refused to enter into the broadly worded Arbitration Agreement. Instead, they opted to not only defend, but to pursue relief in the arbitration and subsequently agreed to litigate all

11

incidental claims there including claims regarding shareholder voting rights and the board nomination and appointment process formerly governed under the Shareholder Agreement. Plaintiffs are now bound by that decision.

Finally, plaintiffs' argument that disputes arising under the Stock Redemption Agreement are not subject to the arbitration is undercut by the fact that plaintiffs have cited to the Stock Redemption Agreement in the arbitration as part of their defense against MPS' unjust enrichment claim. In addition, plaintiffs have offered the Stock Redemption Agreement as an exhibit in support of both their defense and counter-claims in the arbitration. As such, the Stock Redemption Agreement is already part of the arbitration and further compels the court to conclude that the shareholder disputes raised here are, at minimum, incidental to the matters pending in the arbitration and governed under the Arbitration Agreement. As a result, MPS' motion to compel must be granted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that MPS' motion to compel arbitration [ECF No. 41] is granted.

Dated: April 30, 2019
                                                        s/David S. Doty
                                                        David S. Doty, Judge
                                                        United States District Court